UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

IN RE:

BRAMPTON PLANTATION, LLC,

Debtor.

---

BRAMPTON PLANTATION, LLC,

Appellant,

v.					4:12-cv-17

GERMAN AMERICAN CAPITAL
CORPORATION,

Appellee.

## ORDER

### I. INTRODUCTION

Before the Court are Debtor/Appellant Brampton Plantation, LLC's ("Brampton Plantation") appeal of the Bankruptcy Judge's decision granting Appellee German American Capital Corporation ("GACC") relief from the automatic bankruptcy stay and "Emergency Motion for Stay of Bankruptcy Court's Valuation Order and Order Lifting Automatic Stay Pending Appeal and Request for Emergency Hearing Prior to March 7, 2012." *See* Doc. 6.

### II. FACTS

Brampton Plantation filed its Chapter 11 case on May 3, 2010. *See* Doc. 1-6 at 284. Brampton Plantation is the owner and developer of a residential community on Hutchinson Island, located across the Savannah River from Savannah's Historic District. *See id.* The community is located "adjacent to a resort quality golf course, river and marsh frontages and views, and [is] convenient to Savannah shopping and commercial centers." *Id.*

Brampton Plantation purchased the property in two separate tracts: one for $7,000,000 in 2003 and another for $1,000,000 in 2005. *See id.* at 128. Brampton Plantation spent $33,000,000 making infrastructural improvements to the site and began marketing lots in 2006. *See id.* at 129.

The property consists of ninety-plus acres. "Phase I" accounts for approximately fifty-eight of the ninety-plus acres in the development. *See id.* As of September 8, 2011, Brampton Plantation had managed to sell only 28 of the 242 lots in Phase I. *See id.* The remaining thirty-six acres, "Phase II" or "excess property," "are cited and approved for development and have some infrastructure in place, but the subdivision lot lines have not been recorded." *Id.*

The value of the development, which is pledged to GACC by assignment from Branch Banking and Trust Company ("BB&T") to serve a loan, is the central issue in this appeal. *See id.* at 285. The original principal of the loan was $21,000,000; the amount due on the loan is now approximately $29,000,000 due to interest at 7.75%, $1,431,500.25 of ad valorem taxes paid by GACC, and other charges. *See id.* at 285 & n.1. Brampton

Plantation also owes costs and attorney's fees. *See id.* at 285 n.1. The interest in this case accrues at approximately $5,100.00 per day. *See id.*

The parties have stipulated to many facts in this case:

1. The Debtor is a Delaware limited liability company formed for the purpose of owning and developing for residential use approximately 91 acres of land to be known as The Reserve at Savannah Harbor on Hutchinson Island, Chatham County, Savannah, Georgia ("the Property").

2. The Property is the subject of an approved master plan providing for 815 units, currently has 200+ lots platted, as well as infrastructure and improvements in place consisting of: roads, curbs, gutters, architectural Street lamps, two lift stations, a gated entrance with monument sign, a greeter station, a park which is fully completed known as Mary Musgrove Park and a clubhouse (dried-in and 75% complete).

3. In connection with the Debtor's acquisition and development of the Property, Debtor executed and delivered to Lender:

(a) a Revolving Promissory Note dated July 11, 2005, in the original principal amount of up to $21,000,000, made by the Debtor to the order of BB&T (as at any time amended, the "Revolving Note"), as amended By an Allonge and First Modification to Revolving Promissory Note dated September 26, 2007 (which, among other things, increased the maximum principal amount thereunder to $24,500,00), an Allonge and Second Modification to Revolving Promissory Note dated March 11, 2009, and the Allonge and Third Modification to Revolving Promissory Note dated May 20, 2009; true and correct copies of which are attached to the Motion for Relief filed by BB&T in this case.

(b) a Loan Agreement dated July 11, 2005 (as at any time amended, the "Loan Agreement"), between the Debtor and BB&T, as amended by a First Modification to Loan Agreement and Other Loan Documents dated September 26,2007, an Omnibus Amendment of Loan Documents dated September 26, 2007, a Second Modification to Loan Agreement and Other Loan Documents dated March 11, 2009, and a Third Modification to Loan Agreement and Other Loan Documents dated May 20, 2009 . . . .

(c) a Deed to Secure Debt and Security Agreement dated July 11, 2005 (as at any time amended, the "Security Deed"), made by the Debtor in favor of BB&T and recorded at Deed

2

Book 290-V, Page 49, Office of the Clerk, Superior Court of Chatham County, Georgia, as amended by a Modification of Deed to Secure Debt and Security Agreement, Assignment of Leases, Rents and Profits and Other Loan Documents dated December 5, 2005, and recorded at Deed Book 298-0, Page 447, aforesaid records, a Second Modification of Deed to Secure Debt and Security Agreement, Assignment of Rents and Profits and Other Loan Documents dated September 26, 2007, and recorded in Deed Book 332-H, Page 475, aforesaid records, and a Third Modification of Deed to Secure Debt and Security Agreement, Assignment of Leases, Rents and Profits and Other Loan Documents dated March 11, 2009; and recorded at Deed Book 349-K, Page 324, aforesaid records . . . .

(d) a UCC-1 financing statement filed with the Delaware Department of State on July 19, 2005, at File No. 5228932-1, naming the Debtor as debtor and BB&T as secured party . . . .

4. GACC is the holder of the above-described loan documents by virtue of assignment from BB&T.

5. The total of Debtor's investment in the Property, including acquisition, development and improvement costs is in excess of $40,000,000.00.

6. The Revolving Note matured by its terms on January 31, 2010.

7. By letter dated April 2, 2010, Lender advised Debtor that Lender intended to sell the property as described in the Security Deed (the "Property") at foreclosure on May 4, 2010.

8. Between April 2, 2010, and May 3, 2010, the Debtor and BB&T continued to discuss a resolution of the indebtedness, but were unsuccessful.

9. At the time of the Debtor's bankruptcy filing on May 3, 2010, the approximate principal indebtedness owed by Debtor to Lender under the Revolving Note was $23,966,217 plus interest and other charges.

10. The non-default rate of interest on the Revolving Note is the Wall Street Journal prime rate, plus one-half of one percent (.50%). The maturity, or default rate of interest under the Revolving Note is four percent (4%) in excess of the applicable rate of interest at the time of default. The contract rate of interest on the date of maturity was 3.75%, so that the default rate of interest thereafter is 7.75%.

11. As of October 14, 2011, the total of unpaid county and city ad valorem taxes on the property was $1,423,603.24, which includes

interest and penalties of $216,161.00.

12. The Debtor owns no assets other than the Property.

13. Debtor has had no income since March of 2008.

14. Debtor has borrowed a total of $195,000.00 from its officer from the date of its bankruptcy filing through May 31, 2011.

15. On September 14, 2011, the City of Savannah Park and Tree sent a letter to the Debtor, and to Branch Bank & Trust (GACC's predecessor in interest) advising of deficiencies related to the Debtor's failure to plant trees required by the City of Savannah Tree Protection Ordinance.
. . .

16. The Debtor filed this bankruptcy case on the date prior to the scheduled non-judicial foreclosure sale of the Property.

17. Debtor has had only one employee during the pendency of the bankruptcy. This employee, Dana Thompkins, has been paid a total of approximately $25,573 since the date of filing.

18. Debtor has not sold any lot or parcel of the Property since October 29, 2007.

19. Debtor has made no payments to Lender during the pendency of this bankruptcy case, but the Debtor contends none has been required by either operation of bankruptcy law or order of the Bankruptcy Court.

20. Debtor has made no improvements to the Property during the pendency of this bankruptcy case.

21. The Debtor has attempted, without success, to refinance the indebtedness now owed to GACC.

22. An Order was entered in the Bankruptcy Court on July 26, 2010, in which BB&T and the Debtor agreed to Brampton's designation as a single asset real estate debtor.

23. Brampton filed a Plan of Reorganization on August 20, 20 10 (the "Plan") within 30 days of said determination as required under 11 U.S.C. § 362(d)(3)(A) . . . . The Plan asserted a value of the Property of $32,180,000 based upon an appraisal performed by Clayton Weibel, MAI, appraiser for Brampton, dated July 5, 2010, (the "Weibel Appraisal") and generally calls for the Property to be divided into parcels and granted to creditors in a value proportionate to their respective claims.

24. An evidentiary hearing on the valuation of the Property was conducted over the course of one full day on July 22, 2011, wherein the Bankruptcy Court received appraisals and heard the testimony of Joel Crisler, MAI, appraiser for BB&T/GACC (the "Crisler Appraisal") and Mr. Weibel. The Crisler Appraisal values the Property at $4,233,000 and the Weibel

Appraisal, as stated above, valued the Property at $32,180,000.

25. On September 12, 2011, the Bankruptcy Court issued its Memorandum and Order on Valuation and Ruled in favor of GACC, accepting the Crisler Appraisal over the Weibel Appraisal.

Doc. 1-6 at 285-290. Thus, the Bankruptcy Judge has determined that the property is worth $4,233,000.

The Bankruptcy Judge rejected Weibel's evaluation primarily for three reasons:

1. His comparables are unconvincing . . ., and the idea that thirty-six acres of partially developed land is worth four times the value of fifty-eight acres of fully developed land is inconceivable.

2. He assumes the market will pay the full cost of infrastructure, but experience to date demonstrates otherwise. The preexisting Phase I lots have not sold, and when they do sell, they will sell for a fair market value, regardless of how much the infrastructure may have cost.

3. His assumptions as to the condo tracts are unsupported by the current infrastructure and zoning. Parcel D is already platted for 10 single family homes, not a high-rise condominium building of 185 units. Parcel C is not platted for any particular use and its infrastructure is only partially complete.

Doc. 1-6 at 132-33. The Bankruptcy Judge recognized that the current real estate market makes thirteen-year projection periods such as Crisler's clearly speculative. *See id.* at 132. The Bankruptcy Judge stated that, while he had doubts concerning "how property subdivided, with infrastructure in place at a total cost of $33 million can be worth barely 13% of that number, no matter how disastrous the real estate market collapse," Weibel's determination was "wildly optimistic and fundamentally unsupported by solid facts." *See id.* at 133. The Bankruptcy Judge recognized Crisler's testimony that market conditions have caused the precipitous drop in value from one year to the next as unchallenged. *See id.* Focusing on this testimony, the Bankruptcy Judge determined that the property's drop in value was supported by evidence. *See id.*

More stipulated facts deal with occurrences after the valuation hearing:

26. The Debtor has not filed an Amended Plan utilizing the Court's valuation of the Property.

27. On September 26, 2011, the Debtor filed a Motion to Permit Interlocutory Appeal and a Notice of Appeal in the Bankruptcy Court with respect to the September 12, 2011, Memorandum and Order on Valuation.

28. The Bankruptcy Court has transmitted the Motion to Permit Interlocutory Appeal to the United States District Court for Southern District of Georgia.

29. The Motion to Permit Interlocutory Appeal has not been ruled upon by the United States

District Court for the Southern District of Georgia.

[30]. GACC has paid all accrued ad valorem taxes through 2011 in the amount of $1,431,500.25.

[31]. Dean F. Morehouse, principal of the Debtor entity, is a guarantor of the debt, and has contributed $13,158,466.44 in loans or equity to the Debtor.

Doc. 1-6 at 285-290.

On December 6, 2011, the Bankruptcy Judge granted GACC's motion for relief from stay, finding that GACC was entitled to relief under 11 U.S.C. § 362(d)(3) and 11 U.S.C. § 362(d)(2). *See* Doc. 1-6 at 291, 295-96.

Applying § 362(d)(3), the Bankruptcy Judge found no evidence that Brampton Plantation was making monthly payments at least equal to the accruing non-default rate. *See id.* at 292. The Bankruptcy Judge also determined that Brampton Plantation had not filed a reorganization plan with a reasonable possibility of being confirmed within a reasonable time. *See id.* Brampton Plantation did file a plan that was based on its expert's evaluation of the property, an evaluation which the Bankruptcy Judge rejected. *See id.* Brampton Plantation did not seek to amend its plan to conform to the value adopted by the Bankruptcy Judge. *See id.* Brampton Plantation does not now seek to amend that plan.

The Bankruptcy Judge further found that, even if Brampton Plantation had attempted to amend its plan, GACC was entitled to relief under § 362(d)(2) and § 362(d)(3)(A). *See id.* at 292-93. GACC successfully demonstrated a lack of equity in the property; Brampton Plantation owed $29,000,000 or more to GACC, and the property was worth only $4,233,000. *See id.* at 294. Because of the utter lack of equity in the property, the Bankruptcy Judge concluded that Brampton Plantation failed to show that it could reorganize within a reasonable time. *See id.*

Brampton Plantation appealed the valuation Order and the Bankruptcy Court's Order granting relief from the automatic stay. *See* Doc. 1. The Court consolidated this case with Brampton Plantation's earlier interlocutory appeal. *See* Doc. 8; *see also Brampton Plantation, LLC. v. German Am. Capital Corp.*, No. 4:11-cv-270 (S.D. Ga. Oct. 26, 2011).

### III. STANDARDS OF REVIEW

"In reviewing the decision of a bankruptcy court to grant a motion for relief from stay under § 362(d)(1), this Court is required to apply an abuse of discretion standard." *In re Watford*, 159 B.R. 597, 600 (M.D. Ga. 1993).

The Court reviews the Bankruptcy Judge's determination of value for clear error. *See Smith v. Am. Motor Inns of Fla., Inc.*, 538 F.2d 1090, 1092 (5th Cir. 1976). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. Ore. State Medical Soc.*, 343 U.S. 326, 339 (1952) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

6

The Bankruptcy Judge reviewed reports and heard testimony from both Crisler and Weibel in this case and chose to credit Crisler's testimony. The Court:

> generally do[es] not disturb the bankruptcy court's credibility determinations . . . because the bankruptcy court is best able to assess the credibility and evidentiary content of the testimony of the witnesses before it . . . . In other contexts, [the Eleventh Circuit] ha[s] stated that [it] would not disturb a district judge's credibility finding unless a witness's testimony is unbelievable on its face.

*In re O'Lone*, 405 F. App'x 413, 414 (11th Cir. 2010) (internal citations omitted); *see also In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996) (stating that a district court must "give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses").

The Court reviews the Bankruptcy Court's determinations of law de novo. See *In re Holloway*, 81 F.3d 1062, 1065 (11th Cir. 1996).

## IV. ANALYSIS

Brampton Plantation appeals the decision of the Bankruptcy Judge granting GACC's motion for relief from the automatic stay. *See* Doc. 1. Brampton Plantation also seeks to stay a foreclosure sale of Brampton Plantation's real property on March 7, 2012. *See* Doc. 6.

### A. Procedural Propriety of the Motion

The Federal Rules of Bankruptcy Procedure permit "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal." FED. R. BANKR. P. 8005. The motion must first be filed before the Bankruptcy Judge. *See id.* A party may make this same motion to the District Court, but that party must first show why relief was not obtained from the Bankruptcy Judge. *See id.*

The Federal Rules of Bankruptcy Procedure also contemplate "emergency motions." Such motions "shall be accompanied by an affidavit setting forth the nature of the emergency." FED. R. BANKR. P. 8011(d). "Prior to filing the motion, the movant shall make every practicable effort to notify opposing counsel in time for counsel to respond to the motion." *Id.*

Brampton Plantation has made a sufficient showing of why this relief was not obtained from the Bankruptcy Judge. The Bankruptcy Judge, considering the same arguments that Brampton Plantation currently presents here, denied Brampton's motion for a stay pending interlocutory appeal. *See* Doc. 1-6 at 172-73, 212-14, 279-83.

Although it has not submitted an affidavit setting forth the nature of the emergency, Brampton Farm attached a copy of the notice for the foreclosure sale. See Doc. 6 at 65. The notice sufficiently informs the Court of the nature of the emergency. *Cf. In re Zahn Farms*, 206 B.R. 643, 645 (2d Cir. 1997) (disparaging lack of affidavit and indicating that motion itself was insufficient because it merely "suggest[ed] that at some unspecified point

7

in the future a foreclosure sale and a sale of personalty [would] occur"). Therefore, the Court will consider the merits of Brampton Plantation's appeal and motion contemporaneously.

## B. Merits of the Appeal and the Motion to Stay

"The grant of an emergency motion to stay the trial court's mandate is . . . an exceptional response granted only upon a showing of four factors." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

For a debtor to obtain a stay pending appeal, the debtor must show that:

> (1) there is a likelihood of success on the merits; (2) there will be irreparable harm to the debtor if no stay is granted; (3) there is a lack of substantial harm to the creditor if there is a stay; and (4) the relief requested is not contrary to the public interest.

*Piedmont Assocs. v. Cigna Prop. & Cas. Ins. Co.*, 132 B.R. 75, 76 (N.D. Ga. 1991).

"[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. This Court may not make independent factual findings; "[i]f the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).

### 1. Likelihood of Success

"Ordinarily the first factor is the most important. A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that [this Court] determine that the [Bankruptcy Court] was clearly erroneous." *Garcia-Mir*, 781 F.2d at 1453. However, a sufficiently persuasive showing on the other three factors will justify granting the motion to stay upon a showing of a "substantial case on the merits." *See id.*

"[W]ith respect to questions of fact, the movant usually fails to satisfy the first element." *In re Tex. Equipment Co., Inc.*, 283 B.R. 222, 227 (Bankr. N.D. Tex. 2002). "Real estate appraising is anything but an exact science, and the variables affecting the value of the unique property here under consideration produce a relatively broad range between the high and low limits of clear error." *In re TK-USA, Inc.*, 1999 WL 684141, at *2 (5th Cir. Aug. 11, 1999).

Brampton Plantation harbors sanguine expectations about its chances of success on the merits. Brampton Plantation identifies numerous perceived errors in Crisler's appraisal.

First, Brampton Plantation contends that the appraisal was "based upon a 13 year sellout or absorption period and the implementation of a discounted cash flow analysis" over the period. *See* Doc. 3 at 10-11. Brampton Plantation believes that this period was too long and erroneously assumed the sale of individual lots. *See id.*

Second, Brampton Plantation takes issue with Crisler's adoption of a $67,000 value per lot as opposed to Weibel's $110,000 per lot. *See id.* at 11-12.

8

Third, Brampton Plantation bemoans Crisler's abandonment of the cost approach to valuation; Brampton Plantation believes that any evaluation of the property should have accounted for the $43,000,000 that Brampton Plantation invested on it. *See id.* at 3.

Fourth, Brampton Plantation claims that the Bankruptcy Judge committed an error of law by failing to take into account the Amended Approved Master Plan which called for a called for 371 high-rise condominium units. *See id.* at 11-12. Brampton Plantation takes umbrage with the Bankruptcy Judge's recognition of only ten platted lots on the same site. *See id.* at 13.

Brampton Plantation points to other facts that it believes show clear error in the valuation of the property. For example, Brampton Plantation finds it inconceivable that a property purchased in 2003 for greater than $7,000,000, together with an additional purchase of an adjacent tract of land for approximately $1,000,000 and investments approaching $35,000,000, could hold a value of $4,233,000 at present. *See* Doc. 6 at 10. Brampton Plantation further avers that no reputable bank would extend so much capital for land with such minute value. *See id.* Brampton Plantation also believes the current languid state of the real estate market to be no excuse for Crisler's unjustifiably somber evaluation. *See id.*

Brampton Plantation points to the Bankruptcy Judge's exposition of his own doubt concerning the evaluation. *See id.* at 11; *see also* Doc. 1-6 at 133 ("I truly question how property subdivided, with infrastructure in place at a total cost of $33 million, can be worth barely 13% of that number of that number, no matter how disastrous the real estate market collapse.").

Finally, Brampton Plantation identifies BB&T's proof of claim in excess of $28,000,000, the unique nature of the property, the current improvement of the real estate market conditions in and around Savannah, and the tax evaluation of 243 platted lots owned by Brampton Plantation at $38,897,000 as evidence of the misevaluation of the property. *See id.* at 10-11.

GACC asserts that the Bankruptcy Judge's determination of value was well-founded upon the evidence before that court. *See* Doc. 11 at 5.

Giving due regard to the Bankruptcy Judge's opportunity to weigh the appraisers' credibility, the Court finds no clear error.

The Bankruptcy Judge properly rejected Weibel's evaluation of the Phase I lots. The Bankruptcy Judge accounted for Crisler's lower average price per lot in Phase I by examining the two appraisers' comparables. *See* Doc. 1-6 at 130.

The Bankruptcy Judge disregarded Weibel's inclusion of Telfair Plantation in Jasper County, South Carolina, as a comparable. *See id.* The Bankruptcy Judge determined that Weibel made no adjustment for Telfair Plantation's average lot size, which exceeded that of the property in this case by more than six times. *See id.* The two appraiser's average lot values became "very close" after this exclusion. *See id.* Brampton Plantation does not dispute the Bankruptcy Judge's understanding of the comparable average lot sizes. Thus, the

9

Court cannot say that the Bankruptcy Judge clearly erred in considering the geographic attributes of the property in this case.

The Bankruptcy Judge noted that while "Crisler's thirteen-year window for projected lot sales is so long a period as to be clearly speculative," the need for such an analysis was due to "the nature of the current real estate environment." *See id.* at 132.

Brampton Plantation claims that the Bankruptcy Judge committed an error of law by failing "to recognize the approved master plan." The Bankruptcy Judge looked at the history of the Phase I lots and the current state of the property in deciding to credit Crisler's evaluation and to discount the approved master plan. *See id.* at 133 (identifying lack of sales of Phase I lots and current, non-condominium plotting of Parcels C and D). This was a factual, not legal, determination.

The Bankruptcy Judge also reasonably disregarded Brampton Plantation's investment costs in determining that the Phase I lots "will sell for a fair market value, regardless of how much the infrastructure may have cost." *See id.* The Court simply cannot say with a definite and firm conviction that a clear mistake has been committed.

Because the Bankruptcy Court reasonably considered the history and state of the property, the methodology of the two appraisers' evaluations, and current real estate market conditions in deciding to credit Crisler's evaluation, the Bankruptcy Judge did not clearly err.

Given the value of the property, the Court cannot say that the Bankruptcy Judge abused his discretion in granting GACC's motion for relief from stay. The United States code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . , such as by terminating, annulling, modifying, or conditioning such stay . . .
>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization;
>>
>> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>>
>>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility

of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments . . . .

11 U.S.C. § 362(d)(3).

Brampton Plantation did not present evidence of monthly payments to the Bankruptcy Judge. Furthermore, the Bankruptcy Judge properly determined that Brampton Plantation's plan had no chance of being confirmed because it advanced a property value rejected by the Bankruptcy Judge. GACC carried its burden of showing no equity in the property, and Brampton Plantation failed to show that the property "is essential for an effective reorganization *that is in prospect.*" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988). Therefore, the Bankruptcy Judge did not abuse his discretion in granting GACC the relief it sought.

Accordingly, the Court *AFFIRMS* the decision of the Magistrate Judge.

*2. Irreparable Harm to the Debtor*

Even if the Court had not decided to affirm the Bankruptcy Judge contemporaneously with considering Brampton Plantation's motion for a stay, the Court would not have granted the motion to stay. The Court continues on to the other three factors.

Brampton Plantation claims it will suffer irreparable harm if no stay is granted because the property will be sold at foreclosure on March 7, 2012. *See* Doc. 6 at 13.

Foreclosure will cause irreparable harm to Brampton Plantation. *See Plachter v. United States*, 1992 U.S. Dist. LEXIS 20147, at *4 (S.D. Fla. 1992) ("Appellants will suffer irreparable harm absent the issuance of the stay since the IRS has a lien on Appellants' homestead property upon which it can foreclose."). Thus, this factor weighs in favor of granting the stay.

*3. Lack of Substantial Harm to the Creditor*

Brampton Plantation avers that no substantial harm will visit the Creditor in this case, as GACC purchased BB&T's debt with full knowledge of the bankruptcy proceedings. *See* Doc. 6 at 15. GACC received a discount due to the possibility of protracted litigation. *See id.* Should Brampton Plantation fail in its appeal, GACC will still have its lien and the ability to foreclose. *See id.* If Brampton Plantation is successful, then Brampton Plantation will be able to pay GACC, as an over-secured creditor, the full amount of its claim. *See id.*

In denying Brampton Plantation's motion for stay pending interlocutory appeal, the Bankruptcy Judge found that GACC had purchased BB&T's position in this case by purchasing BB&T's debt. *See* Doc. 1-6 at 282. Not only does the continuation of this case render GACC unable to foreclose on its interest, GACC has already paid $1,400,000 in taxes on the property because Brampton Plantation has no ability to do so. *See id.* Taxes on the property, taxes which GACC must pay, continue to accrue. *See id.* Brampton does not dispute these findings. Thus, GACC suffers substantial harm if the foreclose is

stayed. This factor also weighs in favor of GACC.

#### 4. Not Contrary to the Public Interest

The Bankruptcy Judge correctly discerned that the public interest may best be served through speedy and efficient resolution of cases such as this. *See id.*; *see also In re Brumilk*, 132 B.R. 495, 499 (M.D. Ga. 1991). This last factor also weighs against a stay.

#### 5. Brampton Plantation is Not Entitled to a Stay

The first and most important factor weighs heavily against Brampton Plantation. Brampton Plantation cannot even show a prove "a substantial case on the merits." Consideration of the other factors also suggests that Brampton Plantations motion should be denied.

Because the Court has decided this appeal against Brampton Plantation and because an analysis of the factors indicates that a stay is improper in any event, the Court *DENIES* Brampton Plantation's motion to stay.

### V. CONCLUSION

Brampton Plantations "Emergency Motion for Stay of Bankruptcy Court's Valuation Order and Order Lifting Automatic Stay Pending Appeal and Request for Emergency Hearing Prior to March 7, 2012," *see* Doc. 6, is *DENIED*.

The decision of the Bankruptcy Judge is *AFFIRMED*.

This 5th day of March 2012.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA